UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>    v.<br><br>109,038.167 units of AERO cryptocurrency, with an approximate value of $143,182.38;<br><br>       Defendant. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** <br><br>Civil Action No.: 5:25-cv-790 (GTS/TWD) |

The United States of America (the "Plaintiff") brings this verified complaint for forfeiture *in rem* against the above-captioned property and alleges as follows:

### NATURE OF THE ACTION

1. This action *in rem* is brought against the above-captioned property pursuant to Title 21, United States Code, Section 881(a)(6) as the proceeds of offenses in violation of Title 21, United States Code, Sections 841 and 846 (drug distribution and conspiracy to distribute drugs), and pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in offenses in violation of Title 18, United States Code, Sections 1956 (money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity). The matter is also brought pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

### FORFEITURE AUTHORITY

2. Title 21, United States Code, Section 881(a)(6) provides for the forfeiture of:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation

of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title.

21 U.S.C. § 881(a)(6).

3. Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture of: "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

## THE PARTIES

4. The Plaintiff is the United States of America.

5. The defendant, (referred to hereinafter as the "Defendant Cryptocurrency"), is more particularly described as 109,038.167 units of AERO cryptocurrency, with an approximate value of $143,182.38.

6. The Defendant Cryptocurrency is presently in the custody of the United States of America.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355.  Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345.  Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."  28 U.S.C. § 1355(a).

8. This Court has *in rem* jurisdiction over the Defendant Cryptocurrency and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A),

which provides that a forfeiture action or proceeding "may be brought in…the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).

9. Venue is also properly situated in this district pursuant to Title 28, United States Code, Section 1395(b), which provides that "[a] civil proceeding for forfeiture of property may be prosecuted in any district where such property is found." 28 U.S.C. § 1395(b).

## FACTS

### A. The Investigation

10. Since July 2023, the Drug Enforcement Administration ("DEA"), United States Postal Inspection Service ("USPIS"), and Internal Revenue Service ("IRS") have investigated a Drug Trafficking Organization ("DTO") involving Jason Tran ("Tran") and Yuenna Kwok ("Kwok").

11. Kwok and Tran advertised and sold narcotics on Telegram.[1]

12. The investigation revealed that illegal drug customers would contact members of the conspiracy on Telegram to purchase illegal drugs.

13. Payment for these drugs would be sent via cryptocurrency, peer-to-peer payment applications, or cash parcels sent to locations provided by members of the conspiracy.

14. The bulk of the drugs were stored and packaged within a warehouse, located in Orange County, California, utilized by Tran and Kwok.

---

[1] Telegram is a cloud-based messaging application which allows a person to send encrypted messages, photos, videos, and files, as well as create groups or channels for broadcasting to unlimited audiences.

15. The drugs were then shipped via parcel service, usually the United States Postal Service ("USPS"), to an address provided by the customer.

16. During the investigation, agents completed several undercover purchases of narcotics from the DTO, which were sent to law enforcement via the USPS. From July 2023 until April 2024, two agents acted undercover to communicate with Kwok on Telegram to conduct undercover purchases of methamphetamine.

17. Some of the methamphetamine purchased by the undercover agents was shipped to law enforcement-controlled addresses within the Northern District of New York.

18. Agents made payments for these drugs using cryptocurrency in addition to controlled deliveries of cash made to Kwok's residence in Orange County, California. While undercover, agents sent four cryptocurrency payments to cryptocurrency wallet addresses provided by Kwok to pay for methamphetamine and other drugs provided by Kwok to law enforcement.

19. On April 24, 2024, agents executed search warrants at various locations associated with Kwok and Tran in Orange County, California, including the aforementioned warehouse, and recovered the following: (1) approximately 95 kilograms of substances determined to contain methamphetamine, including orange counterfeit Adderall pills containing methamphetamine); (2) 19 kilograms of substances determined to contain Benzodiazepine; (3) approximately 10.5 kilograms of substances determined to contain Fentanyl, including blue counterfeit oxycodone pills containing fentanyl; (4) approximately two kilograms of cocaine; (5) 800 grams of substances containing heroin, including pills containing heroin, and (6) three kilograms of substances containing MDMA; including pressed MDMA pills. Agents also recovered bulk cash, cryptocurrency, drug packaging, and paraphernalia from these locations. The search also resulted in the seizure and examination of several electronic devices from both Kwok and Tran.

20. Kwok was advised of her Miranda rights and agreed to waive them and speak with agents without an attorney. When speaking with agents, Kwok provided the following information regarding the conspiracy: (1) she admitted to purchasing and reselling illegal drugs on Telegram; (2) she admitted that she used Telegram to communicate with customers and sources of supply; (3) she admitted that the Samsung Galaxy Z Flip 3 cellular device (hereinafter referred to as the "SM Flip") recovered from her residence was hers; (4) she admitted that she had an "investor" who provided the initial start-up funds to start the illegal drug business; (5) she admitted that she created and used the Telegram account on the SM Flip, (6) and she admitted the cellular devices recovered inside her residence contained cryptocurrency wallets which held funds received as payment for illegal drugs.

21. Agents searched Kwok's SM Flip and located individual and group chats on Telegram and WhatsApp. Many of the conversations identified on these apps were between Kwok and an individual later identified as Frank Tsaur ("Tsaur").

22. In these Telegram conversations, Kwok and Tsaur, through the "Familia" chat group, discussed the sale of drugs and established a formal conspiracy.[2]

23. Through "Familia" chats, regular communications occurred between Kwok and Tsaur about drug purchases and sales. The conversations show that Tsaur acted as a drug source of supply and adviser to Kwok, but also obtained drugs from Tran and Kwok on occasion.

24. The messages also indicated that Kwok, Tran, and Tsaur met each other in person to conduct drug sales or repay drug proceeds owed to Tsaur.

---

[2] The "Familia" chat group on Telegram consisted of Tsaur, Kwok, and Tran.

25. The chats show how money was dispersed by the DTO, frequently identifying the specific DTO cryptocurrency wallets where payments were to be deposited by customers or removed from to pay Tsaur.

26. These chats also illustrate the conversion of DTO drug proceeds into various currencies and document the dispersal of DTO funds to Tsaur for either investment in what was termed a "coin project" or repayment of Tsaur's startup funds used to create the DTO.

27. For example, on March 14, 2024, Kwok pinned a message in the chat that said: "Paid $25k to outstanding debt." Shortly thereafter, Tsaur posted a detailed update of the DTO's finances which included a note that said: "$25,000 paid for original investment from reaching $200k first milestone."

B. **Tracing of DTO Funds for Tsaur Repayment through Wang's Kraken Account**

28. Law enforcement agents and analysts used the DTO chat messages, cryptocurrency blockchain analysis, subpoenaed information from cryptocurrency exchanges, and subpoenaed bank records to conduct an analysis of the DTO's use of cryptocurrency.

29. DTO funds transferred through cryptocurrency accounts and wallets held by Wang through DTO repayments to Tsaur for his initial investment in the DTO, and through transfer to Tsaur for investment in "project coin," which was later determined to refer to investment in Aerodrome Finance ("AERO") cryptocurrency.

30. On or about March 14, 2024, a known DTO wallet transferred approximately $24,953 worth of Bitcoin cryptocurrency into a wallet containing address bc1qvtpsgfe7kvh6r5z0af8553zxmsmsvgfmea7ajn (hereinafter referred to as "Wallet bc1qvt")

believed to belong to Tsaur.[3]  During this same period of time, DTO chat messages indicated that this constituted a repayment to Tsaur for his initial investment in the DTO.  Wallet bc1qvt then transferred Bitcoin cryptocurrency valued at approximately $24,044 into a Kraken cryptocurrency account held by Wang on the Kraken cryptocurrency exchange ("Wang's Kraken Account").  Thereafter, Wang's Kraken Account transferred the funds into Tsaur's Coinbase account ("Tsaur's Coinbase Account") on the Coinbase exchange.

31.     In total, Wang's Kraken Account received deposits of cryptocurrency valued at approximately $617,276 between March 10 and March 27, 2024 from at least two Bitcoin wallets believed to be owned by Tsaur, including the $24,044 in DTO funds, noted above.  Approximately $485,794 of the $617,276 in cryptocurrency, or roughly 79%, was sent from a separate Bitcoin wallet, containing four wallet addresses that are also believed to be controlled by Tsaur.[4]

C. **Analysis of Funds Deposited by Wang into Wang's Kraken Account**

32.     Law enforcement conducted a review of all funds transferred into or out of Wang's Kraken account.  Wang's East West Bank account was largely funded through payments believed to be associated with Wang's sale of her eggs and/or a payment by a trust.  On or about March 18, 2024, Wang's East West Bank account transferred $50,000 to Wang's Kraken account. On or

---

[3] This wallet is believed to belong to Tsaur because agents were able to recreate the Bitcoin wallet address "bc1qvt" by using the recovery phrase beginning with "grape begin," a "seed phrase" – a type of recovery phrase – which was identified in a Telegram message written by Tsaur and sent to Wang.  Since Tsaur possessed the recovery phrase, agents believe that the wallet and its funds belonged to Tsaur.  A seed phrase is a series of 12 to 24 words that grant access to a cryptocurrency wallet and acts like a master password/recovery phrase.  Whoever controls the recovery phrase is likely to control the wallet and the funds therein.

[4] Agents believe that Tsaur controlled this wallet because he sent a Telegram message to Wang containing a recovery phrase beginning with "grit illness."  Law enforcement utilized this recovery phrase to reconstitute the Bitcoin wallet.

about March 23, 2024, Wang's Kraken account used the $50,000 deposit to purchase the equivalent value of Ethereum.

33. The Ethereum noted above was then transferred to Wang's self-hosted Coinbase wallet account with the address 0x5E3D253f2c397f2f8463EEB3e498bFE236733157 ("Wang's Wallet 0x5E3D25") and subsequently swapped for an equivalent value of AERO in the amount of 63,107. On or about April 1, 2025, approximately 62,000 AERO was used to buy two Non-Fungible Tokens, ("NFTs"). The NFTs were then sent to Tsaur's self-hosted Coinbase wallet 0xD37d007798FD0A878DDa554908B2f8c6178b5581 ("Tsaur's Wallet 0xD37d00") for free, and commingled with DTO funds.

D. **Transfer of Funds Between Wang's Kraken Account and Wang's Wallet 0x5E3D25**

34. Between March 11, 2024 and March 27, 2024, Wang's Kraken account sent cryptocurrency valued at approximately $615,580 to a wallet address belonging to Tsaur's Coinbase Account. Tsaur's Coinbase Account then converted the approximately $615,580 in cryptocurrency into AERO tokens as part of the "project coin." By April 15, 2024, Tsaur had accumulated 1,415,478 AERO in Tsaur's Coinbase Account – effectively tripling his investment by using the drug proceeds and other funds to invest heavily in AERO cryptocurrency in March 2024.

35. On April 15, 2024, Tsaur's Coinbase Account sent the 1,415,478 AERO to Wang's Wallet 0x5E3D25. Tsaur's Coinbase Account was largely emptied by this transfer to Wang's Wallet 0x5E3D25. Over the next several days, most of these funds were then transferred in some capacity to Tsaur's Wallet 0xD37d00. Approximately 65,450 AERO was left in Wang's Wallet 0x5E3D25 after it was used transfer the funds between Tsaur's Coinbase Account and Tsaur's Wallet 0xD37d00. Wang's Wallet 0x5E3D25 earned rewards for possessing and or lending the

65,450 AERO in a cryptocurrency investment type behavior. Ultimately, these funds, which were sourced by DTO payments received by Tsaur, were seized by law enforcement from Wang's Wallet 0x5E3D25 as a component of the Defendant Cryptocurrency.

### E. Tracing of DTO Funds to Wang's Wallet 0x5E3D25 for DTO Investment in AERO

36. Additional illicit activity was identified in Telegram messages between Tsaur and DTO members. In Telegram chats, Tsaur provided the DTO with Ethereum wallet address 0x7913C9E677030B8a60DF1ce411C8ae2Fa37a6aB5 ("Wallet 0x7913C") and address 0x6F1D5C80FE5A0B6661Ae7A1Db30F30564D54b428 ("Wallet 0x6F1D5") as addresses for Tsaur to receive DTO cryptocurrency funds for investments in AERO through "project coin." In total, Tsaur received a combined value of approximately $249,765 worth of cryptocurrency into Wallet 0x7913C and Wallet 0x6F1D5 from DTO wallet addresses. These funds were sent to Wang's Wallet 0x5E3D25 between April 02, 2024 and April 25, 2024. Nearly all of these funds were subsequently sent from Wang's Wallet 0x5ED25 to Tsaur's Wallet 0xD37d00 where they were later seized by DEA agents. Consequently, Wang's Wallet 0x5E3D25 was used as a pass-through wallet to funnel DTO funds to Tsaur for investment in "project coin."

### F. Seizure of Funds from Wang's Wallet 0x5E3D25

37. When search warrants were executed at Tsaur's residence on October 29, 2024, the private key for Wang's Wallet 0x5E3D25, noted above, was found to be held in a Coinbase wallet cellular application found on Wang's personal Apple iPhone. Once the passcode was used to unlock Wang's Wallet 0x5E3D25, DEA agents seized the Defendant Cryptocurrency, 109,038.167 AERO, worth approximately $143,182.38, and transferred the funds to a government-controlled wallet.

38. The seized cryptocurrency consists of miscellaneous leftover funds from Wang's personal deposits co-mingled with drug profits, proceeds, and investments transferred from Tsaur and DTO wallets.

### G. The DTO's Lack of Legitimate Income

39. During the investigation, law enforcement identified SJT Investment LLC as an entity created and controlled by Kwok and Tran. SJT is managed by TK Capital Holdings LLC. Agents have identified at least two SJT bank accounts for which Kwok is the account signatory. Kwok and Tran are the sole members of TK Capital Holdings.

40. During Kwok's April 2024 interview, Kwok stated that her company was created for the purpose of running an e-commerce business which would resell items on eBay, Amazon, and Walmart. Kwok further stated that the e-commerce business had some initial success but was practically non-existent by the time of her arrest. She stated that the company might sell "a cookie or chips here and there."

41. Kwok indicated the profit margins for this type of business were very slim, there was stiff competition with other Amazon suppliers, and customers were very picky and prone to complain. Kwok said that the business was not profitable, stating: "we were in the red."

42. Tsaur publicly portrayed himself as an "entrepreneur," and "cryptocurrency trainer/advisor." Tsaur was identified as the registered agent for an entity identified as TO2M Inc., with a principal address at his residence.

43. TO2M advertised the development and sale of a unique feminine hygiene product, but no longer appears to be in operation. The product is unavailable on Amazon and a Google search revealed no way to locate or purchase the product in the United States. Google searches showed the initial marketing from around 2016 and 2017 from such places as Linked In, Facebook,

and YouTube; however, it does not appear there were any postings or advertising undertaken by TO2M since.

44. A Facebook page for a version of the business focused on the Taiwanese market stopped updating as of October 2023. Agents also observed June 2024 and August 2024 emails from Amazon to Tsaur's personal Google account informing him that T02M products were being removed from Amazon as the products were found to contain pesticides. During the execution of the search warrant at the Tsaur residence, boxes of these TO2M products were found.

45. The company did not appear to have any substantial sales volume or activity.

46. As noted previously, Wang is unauthorized to work in the United States.

47. Agents believe that Wang is selling her eggs to a company in California called Baby Seed after reviewing subpoenaed bank records and records from Wang's cellular device.

48. Stored communications between Tsaur and Wang indicated the couple also rented rooms in their home to women who travelled from Taiwan to the United States to sell their own eggs.

### H. Indictment of Tsaur, Tran, and Kwok in July 2024

49. Tsaur, Tran, and Kwok were indicted in the United States District Court for the Northern District of New York on July 17, 2024, in matter *United States v. Tran, et al.*, 5:24-CR-315 (GTS), and Tsaur was charged with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 18 U.S.C. §§ 841(a)(1) and 846.

### I. Arrest of Tsaur and Execution of the Search Warrant at the Tsaur Residence

50. On October 29, 2024, DEA and USPIS Inspectors executed a federal search warrant at Tsaur's residence and arrested Tsaur inside.

51. Wang was also present inside the residence during the time of execution.

52. Tsaur declined to speak with agents without an attorney.

53. Agents recovered small amounts of what is believed to be MDMA pills, ketamine, and other drugs. Agents also recovered four firearms, $101,813 in U.S. currency from a safe and vanity in the master bedroom, and numerous electronic devices.

54. During the execution of the search warrant, agents also seized the Defendant Cryptocurrency, 109,038.167 AERO cryptocurrency, worth approximately $143,182.38, from Wang's Wallet 0x5E3D25 in the Coinbase Wallet cellular application located on Wang's Apple iPhone.

55. The seized AERO was contained within Wang's Wallet 0x5E3D25, which received DTO funds traced from DTO cryptocurrency wallet addresses which were seized by law enforcement in April 2024 or were identified in the DTO "Familia" chat.

## CONCLUSION

56. The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, the Plaintiff, the United States of America, respectfully requests that the Court:

(1) Issue a Warrant of Arrest *in Rem*, in the form submitted with this Complaint;

(2) Direct any person having any claim to the Defendant Cryptocurrency to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3) Enter judgment declaring the Defendant Cryptocurrency to be forfeited and condemned to the use and benefit of the United States; and

(4) Award such other and further relief to the United States as it deems proper and just.

Dated: June 17, 2025            JOHN A. SARCONE III
United States Attorney

By:    */s/ Elizabeth A. Conger*
Elizabeth A. Conger
Assistant United States Attorney
Bar Roll No. 520872

## VERIFICATION

STATE OF NEW YORK      )
                       )  ss:
COUNTY OF ONONDAGA     )

Matthew Waters, being duly sworn, deposes and states:

I am a Special Agent with the Drug Enforcement Administration (DEA). I have read the foregoing Complaint for Forfeiture *in Rem* and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers, analysts, and technical professionals.

Dated this 18th day of June, 2025.

Matthew Waters, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 18th day of June, 2024.

Notary Public

MARIANNE A. MEIGS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ME5030983
Qualified in Onondaga County
Commission Expires October 24, 2026